**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ENVIRONMENTAL TECTONICS CORPORATION

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 05-746C
(Judge Susan G. Braden)

**Defendant's Opposition to Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(1)**

Plaintiff Environmental Tectonics Corporation ("ETC") opposes defendant's Motion to Dismiss dated April 21, 2006 ("Motion"). None of the government's arguments justify dismissal based on a lack of subject matter jurisdiction. ETC has incurred, and continues to incur, significant costs in the performance of contract no. N47408-98-C-2103 (the "Contract") as a result of government-caused delays and changes to the scope of work. As discussed below, the Court is authorized to award interest on those costs, both imputed interest and statutory interest, as well as interest actually paid to third parties, to the extent it determines that those costs are compensable either as an equitable adjustment under the Contract or have resulted from a breach of the Contract. What those costs are, and the interest payable thereon, are matters to be ascertained at trial. Additionally, while the Complaint perhaps in-artfully characterizes certain costs as claim preparation costs, ETC will show at trial that the majority of those costs were incurred in presenting a talking paper ("White Paper") to the government, which was prepared, at least in part, at the government's request. As such, these costs are not materially different from costs incurred by ETC, and paid for by defendant, for preparing a change order proposal.



118486.06501/35728313v.3

**I. This Court Possesses the Necessary Jurisdiction to Award ETC Damages for Financing Costs, Be it Imputed Interest, Statutory Interest, or Interest Paid to Third Parties**

In deciding a motion to dismiss based on a lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also*, *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The jurisdiction of the Court of Federal Claims to award interest depends upon the extent to which the United States has waived its sovereign immunity. *Bianchi v. United States*, 46 Fed. Cl. 363, 365 (2000). The Court of Federal Claims may award a claimant, as a form of damages, interest if a statute or contract permits it. *See* 28 U.S.C. § 2516(a). Defendant admits as much. Motion at 4 ("The no-interest rule is an 'ancient doctrine disallowing interest against the government, in the absence of an express statute or contractual provision.'"). The Contract incorporates by reference, at page I-2, Federal Acquisition Regulations ("FAR") clause 52.233-1 (Disputes (Oct 1995), Alternate I (Dec 1991)), which requires the government to pay interest on the amounts found due and unpaid from the date that the Contracting Officer receives the certified claim. FAR § 52.233-1(h). As defendant noted, ETC submitted a certified claim to the contracting officer on May 6, 2003. Motion at 2. Thus, as ETC shall prove at trial, much of the interest costs claimed are, per the terms of the contract, compensable as statutory interest under the Contract Disputes Act interest provision, 41 U.S.C. § 611, irrespective of whether the Court concludes that the costs on which the interest is calculated are compensable under the Changes clause of the Contract or as damages for breach of contract, as the Contract Disputes Act makes no distinction between the two.

Moreover, the government's argument ignores the fact that ETC is entitled to recover imputed interest on its investment in capital facilities in the form of allowable Cost of Money.

The Contract incorporates by reference DFARS § 252.243-7001, which states that when costs are a factor in any price adjustment under the contract, contract cost principles and procedures in FAR part 31 and DFARS part 231 apply. FAR § 31.205-10, Cost of Money, makes allowable an imputed interest cost tied to the net book value of capital assets associated with the Contract, as opposed to interest on borrowings in general. ETC should be permitted to present evidence at trial establishing its entitlement to Cost of Money, compensable under either the Changes clause of the Contract or as damages for breach of contract.

Finally, while this Court has not recognized entitlement to imputed interest on borrowings generally, it has recognized that contractors are entitled to recover interest constituting actual borrowings paid to third parties to finance a contract that was delayed by the government's breach. ETC should be entitled to prove at trial that it paid specific sums as interest in order to finance the Contract, and that such payments were necessary due to government caused delays and changes. Such costs are compensable either as breach of contract damages or under the Disputes clause as a part of an equitable adjustment for the "increase in the cost of performance of this contract" made allowable pursuant to the Changes clause. *Wickham Contracting Co., Inc. v. Fischer*, 12 F.3d 1574, 1582-83 (Fed. Cir. 1994) ("a contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract."); *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515, 541 (2006) ("Section 2516(a) of Title 28 of the U.S. Code generally prohibits the award of interest against the federal government, but does not bar an interest award as part of an equitable adjustment under a fixed price contract if the contractor has actually paid interest because of the government's delay in payment.")(internal quotations omitted). *See also Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed. Cir. 1987) ("section 2516(a) does not bar an interest

award as part of an equitable adjustment under a fixed-price contract if the contractor has actually paid interest because of the government's delay in payment”).

**II. This Court Possesses Jurisdiction to Award Claim Preparation Costs**

The government’s argument that this Court does not possess jurisdiction to award ETC claim preparation costs is based on arguably in-artful language in the Complaint. ETC’s “claim preparation costs,” as included in the Complaint include, for the most part, costs associated with the preparation of a White Paper proposing a contract price increase, and are part of the cost of contract performance and contract administration. As acknowledged in defendant’s Motion, before ETC submitted its claim, ETC first submitted a draft “talking paper” to the Navy on November 7, 2002, as a means to discuss, informally, an increase in the contract price. Motion at 2. ETC prepared this document at the request of the Contracting Officer.[1] *See* Exhibit 1, email dated October 21, 2002 from Dave DeAngelos, the Contracting Officer’s Technical Representative, to Richard McAdams, the ETC Project Manager. The Navy and ETC had negotiated a Contract modification on a previous occasion and the cost of preparing the proposal for that modification, modification number 1, had been paid by the Navy in modification No. 2. Exhibit 2, Contract Modification No. 2. Moreover, the Navy had not told ETC that it disputed ETC’s entitlement to additional compensation or that a formal “claim” was necessary. Thus, at the time incurred, the costs could not be characterized as costs of prosecuting a claim against the government, as it was in line with the routine established between the parties on previous occasions.

Moreover, in certain instances, costs incurred in connection with the preparation and

[1] This documentation process, which occurred at the request of the Navy, was more expensive than conducting negotiations on a more informal basis.

documentation of requests for equitable adjustment are allowable. *See, e.g., Singer Co., Librascope Div. v. United States*, 215 Ct. Cl. 281, 325-328 (Ct. Cl. 1977)(suggesting costs are allowable if they bear a beneficial nexus either to contract production or to contract administration). The Navy must recognize this principle, as it allowed ETC, in modification number 2, its costs of preparing and negotiating the proposal that led to modification number 1. As the Complaint seeks claim preparation costs for preparing the White Paper, costs which were incurred not only prior to any dispute with the Navy but also at the Navy's direction, this Court possesses jurisdiction to consider arguments that ETC is entitled to recoup these costs as an expense related to contract performance.

Finally, the government's arguments concerning claim preparation costs are predicated on a cost principle in the Federal Acquisition Regulation, FAR § 31.205-47(f)(1). That provision makes unallowable costs incurred in connection with the "prosecution of claims or appeals against the Federal Government." As stated above, the costs claimed by ETC are not related to the <u>prosecution</u> of claims, but the <u>submission</u> of a White Paper and subsequent certified claim, and thus the cost principle alone should not bar recovery.

Moreover, while the government cites broadly to cases disallowing claim preparation costs, these cases miss the mark, as they pertain to claims for equitable adjustments sought pursuant to the Changes clause. *See, e.g., Singer Co., supra*; *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). Claims for equitable adjustments are subject to the cost principles by virtue of the Pricing of Contract Modifications Clause, Contract p. I-3, which makes the cost principles applicable to price adjustments under the Contract. ETC has, in addition to arguing constructive changes pursuant to the Contract, alleged numerous counts of <u>breach</u> of contract, for which recovery is not made under the Changes clause or otherwise limited by the cost principles.

Breach of contract damages are determined consistent with common law principles. *See, e.g., Northern Helex Co. v. United States*, 207 Ct. Cl. 862, 886 (1975), *cert. denied*, 429 U.S. 866 (1976) (in a case involving the government's failure to make payments under a contract for the delivery of helium resulted in a breach of contract, the court stated "[t]he Government cannot be excused for its breach of contract. The plaintiff is entitled to recover common-law damages for such breach."). The Court plainly has jurisdiction to award claim preparation costs as compensation for a breach of contract and ETC should be granted the opportunity to present evidence establishing such breaches and the damages associated therewith.

For these reasons, this Court has jurisdiction to hear ETC's arguments related to the financing costs and costs associated with the preparation of the White Paper. ETC respectfully requests a hearing on this matter.

Respectfully submitted this 19th day of May, 2006.

_____s/Brian A. Bannon_______

Brian A. Bannon
Blank Rome LLP
600 New Hampshire Ave, NW
Washington, D.C. 20037
(202) 772-5905 (phone)
(202) 572-8355 (fax)
Bannon-b@blankrome.com

*Counsel for Environmental Tectonics Corporation*