# In the United States Court of Federal Claims

No. 05-746C
Filed July 31, 2006
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| ENVIRONMENTAL TECTONICS CORPORATION, | \* Changes Clause, 48 C.F.R. § 52.243-1; \* Claim Preparation Costs, 48 C.F.R. § 31.205-47; |
| Plaintiff, | \* Contract Disputes Act, \* 41 U.S.C. §§ 601, *et seq.*; |
| v. | \* Cost of Money, 48 C.F.R. §§ 31.205-10, \* 9904.414-30, 9904.417-40; \* Disputes Clause, 48 C.F.R. § 52.233-1(h); |
| THE UNITED STATES, | \* Motion to Dismiss, RCFC 12(b)(1); \* Tucker Act Jurisdiction, |
| Defendant. | \* 28 U.S.C. § 1491(a)(1); \* 28 U.S.C. § 2516(a). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Brian A. Bannon**, Blank Rome LLP, Washington, D.C., counsel for Plaintiff.

**Leslie Cayer Ohta**, United States Department of Justice, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge*

### RELEVANT FACTS[1]

A.      **Contract No. N47408-98-C-2103.**

On September 25, 1998, the United States Navy ("the Government") awarded Environmental Tectonics Corporation ("ETC") Contract No. N47408-98-C-2103 ("the Contract"), for the design and fabrication of two Submarine Decompression Chamber ("SDC") Segments. *See* Am. Compl. ¶ 5; *see generally* Compl. Ex. A (the Contract and Amendments to the Contract). Although the initial completion date was April, 8, 1999, this subsequently was changed on four occasions, with a final completion date of August 31, 2003. *See* Compl. Ex. A at 112-13, 118-19, 122-23 126-27.

---

[1] Facts recited herein were derived from:  the July 11, 2005 Complaint ("Compl.") and Exhibit A attached thereto;  the Government's April 21, 2006 Motion to Dismiss ("Gov't Mot."); the May 16, 2005 Amended Complaint ("Am. Compl."); and the Government's Answer to the Amended Complaint ("Am. Ans.").

In addition, the contract value was changed from $3,278,634.58 to $3,354,486.58.  *Id.* at 116-17.

Shortly after award of the Contract, the Government informed ETC of an error in the Government's solicitation package, concerning the maximum allowable weight of the SDC Segments.  *See* Am. Compl. ¶ 59; *see also* Am. Ans. ¶ 59.  In an April 6, 1999 Amendment to the Contract, the Government changed the SDC Segment maximum allowable weight from 17,706 kilograms to 16,581 kilograms, a 6.35% decrease in weight.  *See* Compl. Ex. A at 109.  This change required ETC to redesign the SDC segments, incur additional unanticipated engineering and manufacturing costs, and delay performance.  *See* Am. Compl. ¶¶ 60, 87-88, 91-93, 106-07, 114, 121-22, 131-33.

Sometime after award of the Contract, ETC also recognized that the Contract required two separate design packages for the SDC segments.  *Id.* ¶¶ 145-46 ("Under the Contract, ETC found it was necessary to simultaneously prepare and submit separate design packages for SDC Segment 1 and SDC Segment 2 . . . essentially doubl[ing] ETC's work effort.").  To comply with the Contract's requirements, ETC doubled the work effort budgeted in its proposal, resulting in additional cost and delay.  *Id.* ¶¶ 146, 160-61.

In addition, ETC discovered that the Government's solicitation package contained numerous instances where the amount and size of components were underestimated.  *Id.* ¶ 166.  Again, this situation resulted in an unanticipated increase in engineering and material costs.  *Id.* ¶¶ 167-68.

ETC also incurred other unanticipated material, labor costs, and delays, because the Government allegedly required that ETC perform work that was outside the scope of the Contract and failed to specify that a component for the pressure gauges was only available from one supplier.  *Id.* ¶¶ 222-325, 330-33, 337.

The confluence of these events caused ETC to incur cash flow problems due to the Government's late payment of ETC invoices, as well as lost profits, net unabsorbed overhead, contract financing costs, and rental costs for manufacturing floor space.  *Id.* ¶¶ 347, 349, 353, 366, 376.

**B.      The May 6, 2003 Certified Claim.**

On November 7, 2002, ETC submitted a Request to the Contracting Officer for reimbursement of the costs listed above.  *See* Gov't Mot. at 2.  The Government characterized this as a "draft claim."  *Id.*  On May 6, 2003, ETC converted the November 7, 2002 Request into a "Certified Claim."  *Id.*  ETC amended the Certified Claim on August 7, 2003, January 6, 2004, and April 28, 2004.  *Id.*  On July 22, 2004, the Contracting Officer issued a Final Decision denying all of the claims ETC asserted.  *Id.*

## PROCEDURAL BACKGROUND

On July 11, 2005, ETC filed a Complaint in the United States Court of Federal Claims appealing the Contracting Officer's July 22, 2004 Final Decision. *See* Compl. at 1. Counts One and Two allege a mutual mistake concerning the type of contract that the parties entered and the weight requirement for the SDC segments, seeking reformation and an equitable adjustment. *Id.* ¶¶ 378-402. Counts Three and Four allege that the misrepresented specifications were unilateral mistakes and seeks the costs that were incurred. *Id.* ¶¶ 403-27. Counts Five and Six allege that the Government breached the Contract through "constructive and cardinal changes" and seek costs incurred. *Id.* ¶¶ 428-53. Count Seven alleges that the Government breached the Duty of Good Faith and Fair Dealing and seeks additional engineering and manufacturing costs incurred. *Id.* ¶¶ 454-60. Count Eight[2] alleges that the Government breached the Duty of Disclosure of Superior Knowledge and seeks additional costs over the contract price for the Government's failure to disclose certain information to ETC. *Id.* ¶¶ 461-74. Count Nine alleges that the Government materially breached the Contract and seeks restitution of: "additional, unanticipated labor and material costs . . . ; extended project management costs . . . ; loss of efficiency costs; loss [sic] profits; unabsorbed/unrecovered overhead costs; contract financing costs; rental costs; . . . [and] claim preparation costs." *Id.* ¶¶ 475-77. Count Ten alleges that the Government breached the Contract by delaying commencement of the work subject to the Contract and seeks additional costs. *Id.* ¶¶ 478-81. Count Eleven alleges that the Government has "materially and fundamentally" breached the Contract and seeks costs incurred by ETC due to the Government's breach. *Id.* ¶¶ 482-84.

On November 7, 2005, the Government filed an Answer. On April 21, 2006, the Government filed a Motion to Dismiss Count Nine "to the extent it seeks interest and claim preparation costs." Gov't. Mot. at 1. On May 16, 2006, ETC filed an Amended Complaint deleting the claim for liquidated damages from Count Nine and reducing the amount of restitution sought from $9,109,617.50 to $7,995,398.00. *Compare* Compl. ¶ 477, *with* Am. Compl. ¶ 477. On May 16, 2006, the Government filed an Answer to the Amended Complaint. On May 19, 2006, ETC filed an Opposition to the Government's Motion. On July 7, 2006, the Government filed a Reply.

## DISCUSSION

### A.    Jurisdiction.

#### 1.    Tucker Act.

The Tucker Act provides the United States Court of Federal Claims with "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in

---

[2] The Complaint contains two "Count Eights." *See* Am. Compl. at 62-63. The court has combined the allegations.

tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or the United States executive agency regulation that provides a substantive right to money damages. *See Wopsock* v. *Natchees*, No. 05-1494, ___ F.3d ___, 2006 WL 1889917, at *3, U.S. App. LEXIS 17236, at *9-*10 (Fed. Cir. July 11, 2006) ("Yet, as the Supreme Court has noted, the Tucker Act 'does not create any substantive right enforceable against the United States for money damages.' *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980).  Consequently, a court must consider 'whether the source of substantive law can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *United States* v. *Mitchell*, 463 U.S. 206, 216 (1983)); *see also Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("The Tucker Act does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.  In the parlance of Tucker Act cases, that source must be 'money-mandating.'" (citing *United States* v. *Mitchell*, 463 U.S. 206, 216-17 (1983))).

The parties in this case do not dispute that ETC had a contract with the Government. *See* Am. Compl. ¶ 5; Am. Ans. ¶ 5; *see also* Compl. Ex. A; *Trauma Serv. Group* v. *United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (To establish jurisdiction, a plaintiff "must show that either an express or implied-in-fact contract underlies its claim.").

## 2.    Contract Disputes Act.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2).  The Contract Disputes Act, 41 U.S.C. §§ 601, *et seq.*, provides as a prerequisite to this court's jurisdiction, that the plaintiff exhaust available administrative remedies by first submitting a "claim" to the responsible contracting officer and obtaining a "final decision" from that contracting officer.  *See* 41 U.S.C. § 605(a).

Although the Contract Disputes Act does not define "claim," that term is defined in the Federal Acquisition Regulations ("FAR") as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101; *see also* 48 C.F.R. § 52.233-1(c) (containing the same language).  The United States Court of Appeals for the Federal Circuit has held that no particular formula or terminology is required:

> We know of no requirement in the [Contract] Disputes Act that a "claim" must be submitted in any particular form or use any particular wording. *All that is required is that the contractor submit in writing to the contracting officer a clear and*

4

> *unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.*

*Contract Cleaning Maint. Inc.* v. *United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (citations omitted; emphasis added); *see also Transamerica Ins. Corp.* v. *United States*, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (explaining that the United States Court of Appeals for the Federal Circuit "has definitively stated that certain 'magic words' need not be used and that the intent of the 'claim' governs").

The United States Court of Appeals for the Federal Circuit requires that a contractor must: make a written, non-routine demand to the Contracting Officer; request a final decision; and seek the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract. *See England* v. *The Swanson Group*, 353 F.3d 1375, 1380 (Fed. Cir. 2004) (holding that the Armed Services Board of Contract Appeals lacked jurisdiction because the contractor failed to present to the contracting officer a "claim" within the meaning of the Contract Disputes Act); *James M. Ellett Constr. Co.* v. *United States*, 93 F.3d 1537, 1542-43 (Fed. Cir. 1996) ("[T]here are three requirements a nonroutine submission must meet to be a 'claim.' It must be: (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain."); *see also* 48 C.F.R. §§ 2.101, 52.233-1(c).

In addition, if the claim is in excess of $100,000.00, the contractor must certify that: the claim is made in good faith; the supporting data is accurate and complete; the amount requested accurately reflects the amount for which the contractor believes the Government is liable; and the certifier is duly authorized to certify the claim on behalf of the contractor. *See* 41 U.S.C. §605(c)(1).

The United States Court of Appeals for the Federal Circuit has "enforced the strict limits of the [Contract Disputes Act] as jurisdictional prerequisites to any appeal." *Swanson Group*, 353 F.3d at 1379 (internal quotation & citations omitted). Accordingly, "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *Id.*; *see also James M. Ellett Constr.*, 93 F.3d at 1541-42. ("Thus for the [United States Court of Federal Claims] to have jurisdiction under the [Contract Disputes Act], there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.").

A contracting officer's decision on the claim "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b). Thereafter, a contractor may bring an action to the United States Court of Federal Claims within twelve months of the contracting officer's final decision. *See* 41 U.S.C. §§ 609(a)(1), (3).

**B.      Standard For Motion to Dismiss Pursuant to Rule 12(b)(1).**

A challenge to the court's "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also Fisher*, 402 F.3d at 1173 ("If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal-the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act.");  *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:  (1) lack of jurisdiction over the subject matter [.]").  In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Plaintiff, as the non-moving party, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction.").

**C.      The Court's Resolution Of The Government's Motion To Dismiss.**

**1.      Count Nine Of The Amended Complaint**

Count Nine of the Amended Complaint provides:

**<u>BREACH OF CONTRACT - RESTITUTION</u>**

475.    Plaintiff incorporates by reference the allegations of paragraphs one (1) through four hundred seventy-four (474) as though fully set forth at length herein.

476.    The Government's actions and/or inactions as set forth above constitute fundamental and material breaches of the Contract between the Government and ETC.

477.    As such, ETC is entitled to restitution of all benefits conferred upon the Government pursuant to the Contract, including, but not limited to, the following:

(a)     additional, unanticipated labor and material costs as more fully set forth above;

(b)     extended project management costs as more fully set forth above;

     (c)      loss of efficiency costs;

     (d)      loss [sic] profits;

     (e)      unabsorbed/unrecovered overhead costs;

     (f)      *contract financing costs*;

     (g)      rental costs;

     (h)      [stricken]; and

     (I)      *claim preparation costs*.

WHERFORE, Plaintiff, Environmental Tectonics Corporation, respectfully requests that this Court enter judgment in Plaintiff, ETC's favor, and against Defendant in the amount of not less than **$7,995,398.00**, together with interest from and after June 30, 2005. Plaintiff further requests that this Court award Plaintiff its costs in this action. Finally, Plaintiff requests such other and further relief as the Court determines to be just and proper.

Am. Compl. ¶¶ 475-77 (emphasis added; bold and underlining in original). In the following paragraphs that are incorporated by reference in Count Nine, the Complaint alleges how the contract financing costs were incurred:

1.     **Financing Cost Related to Claim Items Compensable Under the Contract**

    354.    ETC has been required to finance the additional costs it has incurred in the performance of the Contract.

    355.    As a consequence of being required to finance the additional cost its [sic] has incurred in the performance of the Contract, ETC has incurred **$918,672.00** in financing costs. Costs or damages are calculated through June 30, 2005. ETC reserves the right to update such costs or damages in the future.

2.     **Financing Costs Related to Delayed Payments**

    356.    ETC received the Government's payments of their timely submitted Invoices at a date later than was anticipated under the Contract.

357.    As a result of receiving the Government's payments of Invoices at a date later than was anticipated under the Contract, ETC has been required to borrow against its bank line of credit.

358.    As a result of receiving the Government's payments of invoices at a date later than was anticipated under the Contract, ETC has also lost the time value of such money, thereby increasing financing costs and preventing ETC from reducing its debt and growing the company.

359.    As a result of the delayed payment of invoices by the Government, ETC has incurred **$178,841.00** in financing costs.

*Id.* at 354-59 (bold and underlining in original).

The Government "requests that the [c]ourt dismiss [C]ount [Nine] of the [Amended C]omplaint to the extent it seeks interest and claim preparation costs." Gov't Mot. at 1.

### 2.    The Court Has Jurisdiction For Certain "Financing Costs" Claimed In Count Nine.

The United States Supreme Court has held that a plaintiff cannot recover interest from the Government unless there is "congressional consent to the award of interest separate from a general waiver of immunity to suit." *Library of Cong.* v. *Shaw*, 478 U.S. 310, 314 (1986). When creating the Court of Claims, Congress retained this rule and stated that express waivers must be found in a contract or statute. *Id.* at 317; *see also* 28 U.S.C. § 2516(a) ("Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof."). In determining whether immunity has been waived, the court construes waivers "strictly in favor of the sovereign and not enlarge the waiver beyond what the language requires." *Library of Cong.*, 478 U.S. at 318 (internal quotations and citations omitted). In this case, however, three FAR provisions provide the court with the requisite waiver of sovereign immunity.

### a.    Federal Acquisition Regulation 31.205-10.

FAR 31.205-10[3] does not allow the recovery of interest on borrowing. *See* 48 C.F.R. § 31.205-10(c) ("Actual interest cost . . . is unallowable."). FAR 31.205-10, however, allows for the recovery of "cost of money." *See* 48 C.F.R. § 31.205-10(b) ("Cost of money is allowable[.]").

---

[3] Department of Defense Federal Acquisition Regulation Supplement 252.243-7001 provides that, "[w]hen costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR part 31 . . . apply." 48 C.F.R. § 252.243-7001. This Supplement is incorporated into the Contract by reference. *See* Compl. Ex. A at 24.

Specifically, FAR 31.205-10 authorizes payment for "*facilities capital cost of money*" and "cost of money as an element of the cost of *capital assets under construction*." 48 C.F.R. § 31.205-10(a)(3) (emphasis added). "Facilities capital cost of money" is defined as the investment income forgone by the contractor by committing assets to capital assets used to perform the contract, in lieu of investing those assets. *See* 48 C.F.R. § 9904.414-30(c)-(e); *see also* KAREN L. MANOS, GOVERNMENT CONTRACT COSTS & PRICING, 1 GC-Costs 17:A ("Facilities capital cost of money ('FCCM') is the imputed cost of investment income forgone when a contractor commits its resources to capital assets used to perform a contract."). The "cost of capital assets under construction" is defined as the "investment in tangible and intangible capital assets being constructed, fabricated, or developed for a contractor's own use." 48 C.F.R. § 9904.417-40. A capital asset must have "more than minimal value" and been "expected to be held by [the] enterprise for continued use or possession beyond the current accounting period for the benefits [or services] it yields." 48 C.F.R. §§ 9904.417-30(a)(1), (2). In addition, to recover either form of "cost of money," the contractor must comply with three specific requirements set forth in FAR 31.205-10. *See* 48 C.F.R. § 31.205-10(b). ("Cost of money is allowable, provided - - (1) It is measured, assigned, and allocated to contracts in accordance with 48 CFR [§] 9904.414 or measured and added to the cost of capital assets under construction in accordance with 48 CFR [§] 9904.417, as applicable; (2) The requirements of [48 C.F.R. §] 31.205-52, which limit the allowability of cost of money, are followed; and (3) The estimated facilities capital cost of money is specifically identified and proposed in cost proposals relating to the contract under which the cost is to be claimed.").

The Amended Complaint alleges that if the Government made payment on invoices when due, ETC would have been able to reduce the company's debt and grow. *See* Am. Compl. ¶¶ 358-59. The Amended Complaint, however, fails to allege a capital asset to which Plaintiff has committed assets. Therefore, absent future amendment to the Amended Complaint, the court does not have jurisdiction over that portion of Count Nine seeking the "lost value of money." *See, e.g.,* Am. Compl. ¶ 358; *see also* RCFC 15(a).

## b.      Federal Acquisition Regulations 52.243-1 And 52.233-1.

The Contract incorporates FAR 52.243-1, authorizing the Contracting Officer to make unilateral changes to the scope of a fixed-price contract. *See* Compl. Ex. A at 23; *see also* 48 C.F.R. § 52.243-1(a) ("The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract[.]"). If the Contracting Officer required a change that increased the cost of performance, the Contracting Officer must make an equitable adjustment to the contract. *See* 48 C.F.R. § 52.243-1(b) ("If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.").

The United States Court of Appeals for the Federal Circuit has recognized two circumstances where a contractor may recover interest pursuant to FAR 52.243-1. *See Wickham Contracting Co.,*

*Inc.* v. *United States*, 12 F.3d 1574, 1582-83 (Fed. Cir. 1994) ("[A] contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract." (citations omitted)); *Bell* v. *United States*, 404 F.2d 975, 984 (Ct. Cl. 1968) (determining that a contractor was allowed to recover interest on actual borrowings based on government changes to the contract pursuant to an Army Procurement Procedure analogous to 48 C.F.R. § 52.243-1. In both circumstances, however, the contractor must have claimed interest on actual borrowings, rather than imputed interest on equity capital. *See Wickham*, 12 F.3d at 1582 ("Although interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed."); *see also Dravo Corp.* v. *United States*, 594 F.2d 842, 847 (Ct. Cl. 1979) ("[I]t is clear that this court still holds to the view that direct tracing to a specific loan or necessity for increased borrowing is still required to be proven in order for a contractor to recover for interest costs under an equitable adjustment theory."). Accordingly, for a contractor to recover interest under FAR 52.243-1, the Government must either delay payments or change the contract, causing the contractor to borrow and use that money to fund the contract.

The Amended Complaint seeks financing costs to fund additional costs incurred to perform the Contract. *See, e.g.,* Am. Compl. ¶¶ 354-55, 475, 477(f). To the extent these costs are interest on actual debt to finance Government initiated changes to the Contract pursuant to FAR 52.243-1, the court has jurisdiction to adjudicate such claims. The Amended Complaint also seeks as financing costs, the costs from borrowing against ETC's line of bank credit, incurred because of the Government's delay in payment of invoices. *See, e.g.,* Am. Compl. ¶¶ 356-59, 475, 477(f). To the extent these costs are interest on actual debt to finance the Contract, because of the Government's delay in payment of invoices, the court has jurisdiction to adjudicate these claims.

FAR 52.233-1 also allows a contractor to recover interest on a claim submitted to the Contracting Officer that is found to have merit. *See* 48 C.F.R. § 52.233-1(h) ("The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment."); *see also* Compl. Ex. A at 23. This interest is computed from the receipt of the claim by the Contracting Officer and "at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim." 48 C.F.R. § 52.233-1(h).

In this case, the Amended Complaint specifically seeks interest in the form of financing costs incurred as a result of the Government's delays and changes to the Contract. *See* Am. Compl. ¶¶ 354-59, 475, 477(f). The fact that the Contracting Officer denied Plaintiff's Certified Claim is not dispositive of entitlement to interest under FAR 52.233-1, if the court determines otherwise. Therefore, the court has determined that is has jurisdiction to award ETC interest that has accrued on the May 6, 2003 Certified Claim, if Plaintiff prevails in this case.

3.      **The Court Does Not Have Jurisdiction Over Claim Preparation Costs.**

   a.      **Claim Preparation Costs Are Not Recoverable Under Federal Acquisition Regulation.**

ETC seeks to recover costs associated with filing the May 6, 2003 Certified Claim that is the subject of this suit.  *See* Am. Compl. ¶¶ 376, 477 ("As a consequence of having to file a certified CDA claim, ETC has incurred $100,030.00 in costs.  ETC is entitled to restitution of . . . claim preparation costs[.]").  Because these costs are alleged to have been incurred in connection with a prosecution of a claim against the Government or in connection with an appeal of a claim against the Government, they must be dismissed pursuant to 48 C.F.R. § 31.205-47, which provides, in relevant part:

> Costs include, but are not limited to, administrative and clerical expenses the costs of legal services, whether performed by in-house or private counsel; the costs of the services of accountants, consultants, or others retained by the contractor to assist it; costs of employees, officers, and directors; and any similar costs incurred before, during, and after commencement of a judicial or administrative proceeding which bears a direct relationship to the proceedings.

48 C.F.R. § 31.205-47(a).  This Regulation, however, further explains:  "Costs not covered elsewhere in this subsection are *unallowable* if incurred in connection with . . . prosecution of claims or appeals against the Federal Government."  FAR 31.205-47(f) (emphasis added).

Therefore, the court does not have jurisdiction to award the claim for costs associated with filing the May 6, 2003 Certified Claim; as set forth in Count Nine of the Amended Complaint.

   b.      **Claim Preparation Costs Are Not Recoverable Under a Restitution Theory.**

ETC also asserts that it "should be granted the opportunity to present evidence establishing such breaches and the damages associated therewith."  Pl. Resp. at 6.  The United States Court of Appeals for the Federal Circuit has held that "in the absence of specific statutory authority, expenses incurred in litigation, whether, legal, accounting, secretarial or other, are not awarded against the United States."  *Tex. Instruments Inc.* v. *United States*, 991 F.2d 760, 763 (Fed. Cir. 1993).  In light of FAR 31.205-47(f)'s express prohibition on recovery of these costs, the court does not have jurisdiction to award claim preparation costs as set forth in Count Nine of the Amended Complaint, even if Plaintiff prevails in this case.

## CONCLUSION

For the aforementioned reasons, the Government's Motion to Dismiss Count Nine is hereby granted-in-part and denied-in-part.

**IT IS SO ORDERED**.

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**